ALHAMBRA FOUNDRY CO., LTD., a corporation, Plaintiff-Appellant,

v.

GENERAL WAREHOUSEMEN'S UNION, LOCAL 598, Defendant-Appellee.

No. 81–5315.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 8, 1982.

Decided Sept. 14, 1982.

---

**288**

Robert B. Evnen, Kindel & Anderdson, Los Angeles, Cal., for plaintiff-appellant.

Ralph M. Phillips, Los Angeles, Cal., argued for defendant-appellee; Julius M. Reich, Reich, Adell & Crost, Pappy, Kaplon, Vogel & Phillips, Los Angeles, Cal., on brief.

Before GOODWIN and NELSON, Circuit Judges, and PRICE,* District Judge.

PRICE, District Judge:

Alhambra Foundry Co., Ltd. (Alhambra), appellant herein, appeals from an order dismissing its complaint to vacate an arbitration award. We affirm.

This controversy commenced when Alhambra fired two of its employees for fighting in violation of its company rules. At the time of this incident Alhambra was a party to a collective bargaining agreement with General Warehousemen's Union, Local 598 (Local 598) which contained a

* Honorable Edward Dean Price, United States District Judge for the Eastern District of Cali-

provision for arbitration of grievances. Local 598 filed grievances on behalf of the discharged workers in a timely manner seeking reinstatement and an order making them whole. At issue is the following provision of the company rules adopted pursuant to the collective bargaining process:

Section 1—WARNING NOTICE

The Employer will not discharge, suspend or discipline any employee without just cause. No employee will be discharged without having first received one (1) written warning notice and a suspension for the same offense or two (2) written warning notices for unrelated offenses before any such action is taken. A violation of the following, however, shall result in the employee's immediate discharge:

· · · · ·

4. Fighting on Company premises.

· · · · ·

Warning notices to be considered as valid must be issued within ten (10) days after the occurrence of the violation claimed by the Employer on such warning notice. After the passage of nine (9) months a warning notice shall be considered null and void and shall be inadmissible in evidence for any purpose in any subsequent proceeding involving the employee in question. Discharge shall be by proper written notice to the employee within ten (10) days of the occurrence of the violation claimed by the Employer as the basis for discharge.

After a full hearing, the arbitrator ruled that the grievants were discharged in violation of the agreement and that the discharges were changed to disciplinary suspensions of thirty (30) days without pay. The grievants were ordered reinstated with full back pay and contractual allowances less outside earnings.

Alhambra filed a petition in District Court to vacate the arbitration award.

fornia, sitting by designation.

Local 598 filed a motion to dismiss the complaint and application for an order confirming the award. The District Court granted all of the affirmative relief requested by Local 598.

The respective contentions of the parties as determined by the arbitrator are set forth in the following:

The Company contends this language requires discharge for fighting period and only the fact of fighting taking place is necessary for the discharge to follow. The Union contends that discharge for fighting or any of the other listed offenses must still meet the requirement of just cause but is excused from the requirement of written warnings and/or suspension required prior to discharge for offenses not listed.

The second paragraph of this section excludes the use of any warning notice which is older than nine months.

Thereupon, the arbitrator determined the language to be ambiguous:

A reading and consideration of Article XV as a whole convinces the arbitrator either party's interpretation could be reasonably drawn from the language. While clear on its face that just cause is required by the first sentence for all cases of discharge, the language goes on to establish exceptions and specify immediate discharge for fighting. The Arbitrator must consider the language to be ambiguous.[1]

■ An arbitrator is confined to the interpretation and application of the collective bargaining agreement and his award is legitimate only so long as it draws its essence from the agreement. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

This circuit recently had occasion to consider the precise issue raised by Alhambra in *Edna H. Pagel, Inc. v. Teamsters Local*

*Union 595*, 667 F.2d 1275, 1279 (9th Cir. 1982).

In that case, this court held:

In the present case, the collective bargaining agreement contained a clause prohibiting the discharge of employees for picketing or honoring picket lines. The arbitrator interpreted the prohibition against discharge to preclude permanent replacement of employees who exercised this contractually-protected right. Permanent replacement is a drastic economic action which in many respects is similar in its effect to discharge. Certainly, an interpretation, which prohibits permanent replacement, "draws its essence" from the contractual bar against discharge, and whether or not we agree with this interpretation, we cannot say that it is implausible or that it modified the contract.

Nor is the above pronouncement a rule of recent origin in this circuit. In 1969, a panel of this court in *Holly Sugar Corp. v. Distillery, Rectifying, Wine & A.W.I.U.*, 9th Cir., 412 F.2d 899, 903 stated the law of this circuit to be:

Accordingly, while the courts must insure that the arbitrator's award "draws its essence from the collective bargaining agreement" and that his decision does not "manifest an infidelity to this obligation," 363 U.S. at 597 [80 S.Ct. at 1361], they must resist "the temptation to 'reason out' a la judges the arbiter's award to see if it passes muster." *Safeway Stores v. American Bakery & Confectionery Workers International Union* [5th Cir., 390 F.2d 79], supra, at 83. Therefore, if, on its face, the award represents a plausible interpretation of the contract in the context of the parties' conduct, judicial inquiry ceases and the award must be affirmed. *See San Francisco-Oakland Newspaper Guild v. Tribune Publishing Co.*, 407 F.2d 1327 (9th Cir. 1969). *See*

---

1. There is some suggestion in the record of the arbitration proceeding as to whether the arbitrator considered the altercation between the employees to constitute "fighting" within the meaning of the company rules. We hold, after a full consideration of the record, that the arbitrator decided the case upon his construction of the applicable sections of the collective bargaining agreement rather than upon a factual finding on the nature of the altercation.

*also Anaconda Co. v. Great Falls Mill & Smelterman's Union*, 402 F.2d 749 (9th Cir. 1968).

Alhambra based much of its argument on *Arco Polymers, Inc. v. Local 8–74, Etc.*, 517 F.Supp. 681 (W.D.Pa.1981). After briefs were filed in this matter, the trial court decision in *Arco Polymers, Inc.* was reversed by the Third Circuit in a decision reported at 671 F.2d 752. In the course of reversing the trial court, the Third Circuit panel observed that:

> The message is clear: federal courts are not to substitute their judgment for that of the arbitrator because " '[i]t is the arbitrator's construction which was bargained for and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.' " *Ludwig, [Honold Mfg. Co. v. Fletcher,* 3rd Cir.], 405 F.2d [1123] at 1125 (quoting *Enterprise Wheel*, 363 U.S. at 599, 80 S.Ct. at 1362). "[T]he interpretation of labor arbitrators must not be disturbed so long as they are not in 'manifest disregard' of the law, and that 'whether the arbitrators misconstrued a contract' does not open the award to judicial review." 405 F.2d at 1128 (citing *Wilko v. Swan*, 346 U.S. 427, 436, 74 S.Ct. 182, 187, 98 L.Ed. 168 (1953); *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 203 n.4, 76 S.Ct. 273, 276 n.4, 100 L.Ed. 199 (1955)). See R. Gorman, *supra*, at 585 ("[T]he task of the court [is] to determine whether the arbitrator has resolved the grievance by considering the proper sources . . . .").
>
> This policy appears to rest upon two grounds: first, it is considered as an expeditious and relatively inexpensive means of settling grievances and thus a factor in contributing to labor peace, and second, it obviates the enormous burden which would rest upon the judiciary if it should be required to settle, case by case, the endless number of grievances and disputes, many of them over trivial matters, which inevitably occur between employers and employees.

*Timken Co. v. United Steelworkers*, 492 F.2d 1178, 1180 (6th Cir. 1974).

*Arco-Polymers, Inc. v. Local 8–74*, 671 F.2d 752, 755 (3rd Cir. 1982).

■ In short, the arbitrator's award is neither arbitrary nor capricious.

■ The Local 598 requests the court to award sanctions either in the form of costs, double costs or attorneys fees, citing appropriate authority for the court's jurisdiction to do so. Counsel for Local 598 quotes authority from other circuits and districts to substantiate their position. In essence, their argument resolves itself to the contention that the appeal was motivated by economic considerations, *i.e.*, a substantial delay in satisfying the arbitrator's award. Such, of course, is the inevitable result of any appeal from a money judgment or award. The court does not find Alhambra's appeal here to be so frivolous as to warrant the imposition of sanctions. The court notes that the company rules were the result of negotiations between the company and Local 598. Both parties must bear responsibility for the ambiguity which the arbitrator demonstrated and was forced to resolve. Further, the remedy of the economic consequences of an appeal likewise must be solved in future contracts. Accordingly, we decline to impose any of the sanctions provided for in Rule 38 of the Federal Rules of Appellate Procedure.